# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 15-51002

———————

JOHN T. HAYS, M.D.,

      Plaintiff - Appellant

v.

HCA HOLDINGS, INCORPORATED; HCA PHYSICIAN SERVICES, INCORPORATED,

      Defendants - Appellees

———————

Appeal from the United States District Court
for the Western District of Texas

———————

United States Court of Appeals
Fifth Circuit

**FILED**

September 29, 2016

Lyle W. Cayce
Clerk

Before STEWART, Chief Judge, and CLEMENT and HAYNES, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Plaintiff-Appellant Dr. John T. Hays suffers from epilepsy. After a series of stress-related seizures, he was fired from his cardiology practice. He brought several claims against Defendant-Appellees HCA Holdings, Inc. and HCA Physician Services, Inc. (collectively "HCA") arising out of his alleged wrongful termination. The district court ordered arbitration of his claims based on equitable estoppel. We AFFIRM.

No. 15-51002

I.

Hays worked as a cardiologist and contends that HCA failed to accommodate his requests for a limited workload, which caused him to suffer an increased number of stress-related seizures and eventually led to his firing. Initially, Hays sued HCA Holdings, Capital Area Cardiology ("CAC"), and Austin Heart, PLLC, in Texas state court for negligence and for violation of the Texas Commission on Human Rights Act ("TCHRA"). He also sought a declaratory judgment that his Physician Employment Agreement (the "Agreement") was not a valid and enforceable contract. But the Agreement, to which Austin Heart, CAC, and Hays were signatories, required that any disputes relating to the Agreement be submitted to mandatory, binding arbitration. Because of the arbitration clause, the state court granted Austin Heart and CAC's motion to dismiss and compel arbitration. Continuing to litigate against HCA Holdings, Hays amended his state court petition to add HCA Physician Services as a defendant. HCA removed the case to federal court. Hays then amended his complaint to assert claims for wrongful termination in violation of TCHRA, negligence, breach of contract, and tortious interference with at-will employment.

HCA moved to dismiss and compel arbitration on all claims based on equitable estoppel. The district court granted the motion. Applying Texas law, the district court explained that a non-signatory to an agreement could enforce an arbitration clause pursuant to equitable estoppel, and that Texas has explicitly recognized direct benefits estoppel and has implicitly authorized intertwined claims estoppel. Because HCA's liability under the tortious interference claim could not "be determined without reference to the Physician Employment Agreement," the district court applied direct benefits estoppel and concluded that Hays must arbitrate that claim. As to Hays's claims for

2

No. 15-51002

wrongful termination, breach of contract, and negligence, the district court determined that intertwined claims estoppel applied. Relying on *JLM Industries, Inc. v. Stolt-Nielsen, SA*, 387 F.3d 163 (2d Cir. 2004), which the Texas Supreme Court discussed in *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193–94 (Tex. 2007), the district court found that Hays had treated Austin Heart, CAC, and HAC "as a single unit in its pleadings" and had raised "virtually indistinguishable factual allegations" against all defendants. The district court concluded that Hays's pleadings satisfied the "close relationship" test for intertwined claims estoppel. Because all of Hays's claims were subject to arbitration on equitable estoppel grounds, the district court ordered arbitration and dismissed the case with prejudice. Hays timely appealed.

## II.

We review "an order compelling arbitration de novo." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014). We review for an abuse of discretion the district court's use of equitable estoppel to compel arbitration. *Id.* "A district court abuses its discretion if it premises its decision on an erroneous application of the law or a clearly erroneous assessment of the evidence." *Gross v. GGNSC Southaven, LLC*, 817 F.3d 169, 175 (5th Cir. 2016). We "may affirm the district court's judgment on any basis supported by the record." *In re Complaint of Settoon Towing, LLC*, 720 F.3d 268, 280 (5th Cir. 2013).

## III.

Hays contends that the district court abused its discretion in compelling arbitration on his claims under equitable estoppel.[1]

---

[1] Hays opens by arguing that the district court erred because there is no contract between him and HCA that compels arbitration. But his argument is without merit. First, although HCA is not a signatory to the Agreement, a contract to arbitrate may be enforceable by a non-signatory if authorized by applicable state law. *Crawford Prof'l Drugs*, 748 F.3d at

3

A.    Direct Benefits Estoppel

Hays maintains that the district court erred in applying direct benefits estoppel to his tortious interference claim.

Direct benefits estoppel applies when the claim depends on the contract's existence and would be "unable to 'stand independently' without the contract." *G.T. Leach Builders*, 458 S.W.3d at 528 (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739–40 (Tex. 2005)). "Whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading." *Id.* at 527. "[W]hen the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law,' rather than from contract, 'direct benefits' estoppel does not apply, even if the claim refers to or relates to the contract." *Id.* at 528 (quoting *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 184 n.2 (Tex. 2009)).

Here, Hays pled his tortious interference with at-will employment claim in the alternative, stating that the claim applies only if HCA is not found to be his employer. In so pleading, Hays essentially alleges that HCA tortiously interfered with his at-will employment relationship with Austin Heart and CAC. The viability of this claim, however, depends on reference to the Agreement. *Cf. In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) ("[T]ortious interference claims between a signatory to an arbitration agreement and agents or affiliates of the other signatory arise more from the

257; *accord Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 305 (5th Cir. 2016). Texas law governs here, and Texas courts have recognized that "a non-signatory can be bound to, or permitted to enforce, an arbitration agreement" based on equitable estoppel grounds. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015). Second, insofar as Hays attacks the validity of the Agreement as a whole, determinations of the validity of a contract are left to the arbitrator. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 397 (5th Cir. 2006).

contract than general law, and thus fall on the arbitration side of the scale."). As the district court correctly recognized, an at-will employment relationship may exist even if the parties have entered into an employment contract, such as the Agreement. *C.S.C.S., Inc. v. Carter*, 129 S.W.3d 584, 591 (Tex. App.– Dallas 2003, no pet.) ("A contract of employment for a term may still be at-will if the agreement allows termination for any reason."). Because the Agreement would define the employment relationship, even at-will employment, between Hays and Austin Heart and CAC, any alleged liability for tortious interference by HCA "must be determined by reference" to the Agreement. *G.T. Leach Builders*, 458 S.W.3d at 528 (quoting *In re Weekley Homes, LP*, 180 S.W.3d 127, 132 (Tex. 2005)).[2] Thus, HCA's liability depends on the Agreement and the district court did not abuse its discretion in applying direct benefits estoppel to Hays's tortious interference claim.

B.     Intertwined Claims Estoppel

Hays argues that the district court erred by applying intertwined claims estoppel to his remaining claims. He contends that Texas does not recognize that theory of estoppel, and even if it did, the theory is inapplicable here.

Intertwined claims estoppel involves "compel[ing] arbitration when a nonsignatory defendant has a 'close relationship' with one of the signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *In re Merrill Lynch*, 235 S.W.3d at 193–94 (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)); *see Denney v. BDO Seidman, LLP*, 412 F.3d 58, 70–71 (2d Cir. 2005). It applies when there is a "tight relatedness of the parties, contracts, and controversies."

---

[2] Indeed, Hays "acknowledges that his alternatively pled tortious interference claim is dependent on a determination of whether the Agreement is enforceable."

No. 15-51002

*JLM Indus.*, 387 F.3d at 177.[3] Courts have employed this exception to dismiss "strategic pleading" that seeks to avoid arbitration. *In re Merrill Lynch*, 235 S.W.3d at 194.

As Hays correctly notes, the Texas Supreme Court has not expressly adopted intertwined claims estoppel as a valid theory of estoppel. The Texas Supreme Court acknowledged in *Merrill Lynch* that "other federal circuits have estopped signatory plaintiffs from avoiding arbitration with nonsignatories using an 'intertwined-claims' test." 235 S.W.3d at 193. But the court referenced it for the purpose of comparing that theory with concerted misconduct estoppel, which the court went on to reject. *Id.* at 193–95. Distinguishing the two, the Texas Supreme Court explained that concerted misconduct estoppel lacks the limiting "close relationship" component of intertwined claims estoppel. *Id.* at 194; *see In re Banc One Inv. Advisors Corp.*, No. 01-07-01021-CV, 2008 WL 340507, at *2 (Tex. App.–Houston Feb. 7, 2008, no pet.) (indicating that the "close relationship" test is "distinct from concerted misconduct").

Texas courts of appeals, after *Merrill Lynch*, have split on whether the Texas Supreme Court has recognized intertwined claims estoppel. *Compare Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 105–06 (Tex. App.–Houston [14th Dist.] 2012, no pet.) (stating that the Texas Supreme Court in *Merrill Lynch* recognized intertwined claims estoppel), *and FD Frontier Drilling (Cyprus), Ltd. v. Didmon,* 438 S.W.3d 688, 695 (Tex. App.–Houston [1st Dist.] 2014), *reh'g overruled* (July 29, 2014), *review denied* (Nov.

---

[3] "Our cases have recognized that under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed . . . and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *JLM Indus.*, 387 F.3d at 177.

No. 15-51002

7, 2014) ("If the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract containing the arbitration agreement, the claim is arbitrable." (quoting *Cotton Commercial USA*, 387 S.W.3d at 108)), *and Zars v. Brownlow,* No. 07–07–00303–CV, 2013 WL 3355660, at *4 (Tex. App.–Amarillo June 28, 2013, no pet.) (same), *with Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 82 (Tex. App.–Texarkana 2014, no pet.) (describing direct benefits estoppel as "the only form of equitable estoppel recognized in Texas").

And this court has never directly addressed the issue.[4] Although Hays makes much of *Al Rushaid v. National Oilwell Varco, Inc.*, No. 11-CV-3390, 2015 WL 1602125, at *5 (S.D. Tex. Apr. 7, 2015)—a district court decision that criticized *Cotton Commercial* and rejected intertwined claims estoppel—this court did not decide the validity of intertwined claims estoppel on appeal, *see Al Rushaid*, 814 F.3d at 305. Instead, the *Al Rushaid* panel explained that the appellants had advanced concerted misconduct and direct benefits estoppel, and cited the language from *Glassell* that "the only form of equitable estoppel recognized in Texas" is direct benefits. *Id*. (quoting *Glassell Producing Co.*, 422 S.W.3d at 82). Conversely, a prior panel of this court relied on *Cotton Commercial* to analyze the applicability of intertwined claims estoppel. *Zinante v. Drive Elec., LLC*, 582 F. App'x 368, 370–71 (5th Cir. 2014). The *Zinante* panel held that the theory was inapt, but did not question its legitimacy.

---

[4] Some imprecision exists when distinguishing between intertwined claims and concerted misconduct estoppel. This court used the phrase "intertwined claims" in *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524 (5th Cir. 2000), but did so in reference to concerted misconduct estoppel. Conversely, the Texas Supreme Court, in *Merrill Lynch*, differentiated between *Grigson*'s concerted misconduct test (which it went on to reject) and the theory of intertwined claims estoppel. 235 S.W.3d at 192–93.

Because no decision of the Texas Supreme Court precisely recognizes intertwined claims estoppel, we "must make an *Erie* guess and determine as best we can what the Supreme Court of Texas would decide." *Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015) (internal quotation marks and citation omitted). In making an *Erie* guess, we use "the sources of law that the state's highest court would look to," *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 775 F.3d 242, 248 (5th Cir. 2014), including intermediate state appellate court decisions, "the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010).

In *Merrill Lynch*, the Texas Supreme Court strongly implied the validity of this form of estoppel, particularly to counter the problem of strategic pleading: "[A]llowing litigation to proceed that is in substance against a signatory though in form against a nonsignatory would allow indirectly what cannot be done directly." 235 S.W.3d at 193–94. The court observed that intertwined claims estoppel works to prevent signatories to an arbitration agreement from avoiding arbitration simply by suing "nonsignatory principals or agents for pulling the strings." *Id.* at 194. To illustrate, the court explained that the Second Circuit has "compelled arbitration when a nonsignatory defendant has a 'close relationship' with one of the signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 193–94, 194 n.39 (quoting *Thomson-CSF, S.A.*, 64 F.3d at 779, and collecting Second Circuit cases that apply intertwined claims estoppel, including *Denney*, 412 F.3d at 70 and *JLM Industries*, 387 F.3d at 177). And the court approvingly noted that the "close relationship" requirement guards against "sweep[ing] independent entities and even

complete strangers into arbitration agreements," limiting the exception to instances of strategic pleading.[5] *Id.* at 194.

Looking to intermediate state court decisions, Texas courts of appeals have compelled arbitration pursuant to intertwined claims estoppel. *See e.g., Cotton Commercial USA,* 387 S.W.3d at 102; *FD Frontier Drilling (Cyprus),* 438 S.W.3d at 695; *Zars*, 2013 WL 3355660, at \*4.[6] In *Cotton Commercial*, after a school district sued a property restoration services company, the company moved to arbitrate. 387 S.W.3d at 101. Prior to the suit, the contractor and subcontractor, who had worked on the school, had merged to form the surviving property restoration company. Although the school had entered into a restoration agreement with the contractor, which contained an arbitration clause, the school district argued that it could not be compelled to arbitrate because its claims for fraudulent billings were against only the subcontractor. *Id.* at 102–04. In assessing whether arbitration was appropriate, the court of appeals noted that a corporate relationship between the parties, standing alone, is insufficient to compel arbitration. *Id.* at 105.

But the appeals court, relying on *Merrill Lynch*, recognized the applicability of the intertwined claims test "where a nonsignatory has a "close relationship" with one of the signatories and the claims are "intimately founded in and intertwined with the underlying contract obligations." *Id.* (quoting *In re Merrill Lynch*, 235 S.W.3d at 191). The court ordered arbitration

---

[5] It was this possibility of overinclusiveness that led the Texas Supreme Court, in *Merrill Lynch*, to reject concerted misconduct estoppel. *Id.* In making an *Erie* guess, it is noteworthy that in *Merrill Lynch* the Texas Supreme Court distinguished concerted misconduct and intertwined claims estoppel, explicitly disallowing the former while noting the relevancy and value of the latter. *Id.*

[6] In *Glassell Producing Co.*, a Texas court of appeals stated that direct benefits estoppel is the only form of equitable estoppel recognized in Texas. 422 S.W.3d at 82. But the court acknowledged that the Texas Supreme Court had only explicitly rejected the concerted misconduct test. *Id.*

because of the parties' close relationship and because the subcontractor's billings were intertwined with the restoration agreement. *Id.* at 105–06.

Finally, as a policy matter, "both federal and state jurisprudence dictate that any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration." *McKee v. Home Buyers Warranty Corp.*, 45 F.3d 981, 985 (5th Cir. 1995). Texas "strongly favor[s]" arbitration. *Star Sys. Int'l Ltd. v. 3M Co.*, No. 05-15-00669, 2016 WL 2970272, at *2 (Tex. App. May 19, 2016) (citing *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015)). And "questions of arbitrability must [also] be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Because *Merrill Lynch* intimated at the validity of intertwined claims estoppel, because lower courts in Texas have applied the theory, and because arbitration of disputes is strongly favored under federal and state policy, we hold that the Texas Supreme Court, if faced with the question, would adopt intertwined claims estoppel. Accordingly, we hold that Hays must arbitrate his TCHRA, negligence, and breach of contract claims pursuant to intertwined claims estoppel.

Hays treats Austin Heart, CAC, and HAC as a single unit in his pleadings, raising virtually indistinguishable factual allegations against CAC and Austin Heart in arbitration and against HCA here. *See JLM Indus.*, 387 F.3d at 177; *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (affirming arbitration order where the plaintiff treated nonsignatory companies and their signatory assignees as a "single unit in its complaint"). His complaint in this action and his counter-demand in arbitration use almost identical language, substituting only the names of the defendants. As the district court correctly recognized, Hays

treated Austin Heart, CAC, and HAC—affiliates of his former cardiology practice—as if they were interchangeable. *See Smith/Enron*, 198 F.3d at 97–98. It is undeniable that Hays regarded the parties as closely related by failing to differentiate his factual allegations. Moreover, Hays's claims both here and in arbitration relate to his alleged wrongful termination, intertwined with the underlying contractual obligations of the Agreement. There is a "tight relatedness of the parties, contracts and controversies." *JLM Indus.*, 387 F.3d at 177. Hays's current efforts to distinguish amongst defendants and claims are the archetype of strategic pleading intended to avoid the arbitral forum, precisely what intertwined claims estoppel is designed to prevent. We hold that the district court did not abuse its discretion in applying intertwined claims estoppel to compel Hays to arbitrate his remaining claims.

## IV.

We hold that the district court did not abuse its discretion in ordering arbitration of Hays's claims against HCA. Specifically, we hold that the district court properly applied direct benefits estoppel to Hays's tortious interference claim. And in making an *Erie* guess, we hold that the Texas Supreme Court would recognize intertwined claims estoppel and that Hays's remaining claims are subject to arbitration under that theory.

No. 15-51002

HAYNES, Circuit Judge, concurring:

I concur in the judgment of the court. However, I do not join in all of the underlying reasoning. Specifically, I would not reach the issue of intertwined claims estoppel addressed in Section III.B. (and part of IV) because it is unnecessary to do so. I conclude that all of Hays's claims either clearly meet the test for direct benefits estoppel or constitute the kind of "artful pleading" designed to avoid direct benefits estoppel that the Texas Supreme Court found ineffectual to do so in *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188-90 (Tex. 2007). Put another way, the Texas Supreme Court made clear that a party cannot avoid the effects of direct benefits estoppel by "artful pleading." *Id.* That is what Hays endeavored to do here. Existing law, without the need for an "*Erie* guess," thus supports the district court's order sending all of these claims to arbitration. Thus, I concur in the judgment affirming the district court but do not join the discussion of intertwined claims estoppel.